Mr. Zosmar. Thank you very much. Good morning, Your Honors. Robert Zosmar on behalf of the government. May it please the Court, it's the government's position that the District Court erred in granting a new trial for Mr. Mercado and in finding ineffective assistance of counsel. There are three separate bases that we've put forward for that conclusion, any one of which must lead to reversal of the District Court. Two relate to, these all relate to the Strickland standard, of course, of ineffective assistance. Two relate to the performance prong and then, of course, there's the prejudice prong. With regard to performance, it's our view that the judge's opinion cannot be sustained, number one, because the conclusion that this evidence, this questioning of Agent Pedrini should have been excluded is wrong. The evidence was not hearsay based on a rule of evidence that we admittedly, belatedly presented to the District Court, but the District Court was good enough to consider. Is it identification? That's identification. This is clearly a statement of identification based on Your Honor's decision in Lopez authored by Judge Rendell. Notwithstanding Judge Rendell, how is this a statement of identification? Because what Lopez says is that a statement of identification is identifying a person at a time and place. The time and place obviously being the place of the commission of the crime. The statement here, what Agent Pedrini has asked is, what did Rodriguez-Nunez tell you? And what Rodriguez said was, each time I met up with these people to discuss the transaction and then to receive the narcotics, each time there was a second man sitting there and that man was Mercado. That is a pure statement of identification. Or if, or the question probably should have been more pointed, did he identify to you who else was in the car at these junctures? Correct. That is the same question, perhaps better phrased, but that is the question. Now Judge Du Bois was concerned because when Agent Pedrini testified about what Rodriguez told him, he said Rodriguez gave the full account. The full account was, I went up to the car, I got the package of heroin, I put it in my back pocket, and then he's asked the question, as Judge Rendell perhaps has better phrased it, who was the person who was in the passenger seat? And Judge Du Bois says correctly, that the first part of that is not identification. The first part of that, taking the drugs, putting it in your pocket, are additional facts. But our point to that is, those facts were never in dispute. No one is disputing in this case because an agent testified that he saw... Yeah, but isn't the error that the agent essentially lays upon the co-operator, his objection to the jury, is where the error comes in, the counsel not having objected to that. Well, our point is, and there are two points, like I said, we have separate arguments. I know, you got plenty. Right, and part of it is that's a good strategy, and I'll get to that later. But just with regard to this, is he giving his imprimatur, is he adding to the evidence? Absolutely. This is admissible evidence. This is what the government does when it approves a case. But all of it, you'd admit, is not identification. That's true, but again, had this objection been raised by a competent counsel, had he chosen to follow the strategy that the judge thinks he should have followed, these questions could easily have been immediately pared down to the only thing anybody cared about, which is the question phrased by Judge Randell, who was the other person in the car? The government doesn't need to ask, did you get 230 grams of heroin and put it in your pocket? An agent saw that. They went up and grabbed Rodriguez at that moment, took the bag out of his back pocket. So again, when we talk about what really matters here, what Judge Du Bois says the lawyer should have done if he was acting as reasonable counsel, object to the testimony. It's only about the identification. Even on that point, if I may, the cases that you cite, Lopez case among them, makes clear that the most frequent application of this provision of what is not hearsay under the line-up or photo spread, but then forgets or later changes his testimony at trial. Here we have a very different context. There's no line-up or photo spread or any kind of more reliable than in-court identification, police-arranged opportunity to make an identification. What is your best authority for applying the exception under 801 to this context? Your Honor is absolutely correct that the cases generally involve recantation and therefore using the evidence. Our best authority is the rule itself. The rule is plain and explicit. I would have prayed you to do that. Well, you can say the rule is plain and explicit, but here's a challenge that I have for you. In every case, that means we could have the following situation. Even where identification is not at issue. Here Mercado is not saying I wasn't in the car. I get it in the case where that's at issue, the agent comes on, makes perfect sense. But in almost every case you can have the following situation. The agent gets on to lend his imprimatur to any point that may be at issue with regard to the cooperator. So the cooperator says, yeah, I was with the judge. I could have been with the judge. Well, the agent says, well, you know, five minutes after I arrested him, he said he was with the judge. So agent gets on and says he was with the judge. So the jury says, well, you know, the agent said he was with the judge, so I guess he was with the judge. That's my concern. I'm looking at this situation. Your Honor, the agent cannot corroborate the cooperator regarding anything, but can corroborate him regarding identification. And I will point out, and this is further answer to Judge Rosenthal's question. But he's not corroborating. He's merely repeating. That's the problem. Well, he's serving as a human tape recorder. Yeah, if Pedrini had said, you know, I mean, in this situation we know that they saw them when they were arrested. They didn't see them on the earlier instances. Let's say the facts were different and you had an agent who had seen Mr. Mercado on the earlier instances, then I understand, great, he's adding something to it. But if all he's doing is saying, you know, well, as soon as I arrested him, this is what he said, that can't be compliant with, I understand, well, you know, the wording of the rule. But it says something to me that there are no cases that support this particular point. It is fully compliant, Your Honor, and let me tell you why. And first of all, in terms of cases supporting it, this happens every day. And let me tell you the classic situation in which this happens, and that is when there's been a photo spread or lineup, as the judge mentioned. Whether or not there's recantation, it is common in criminal prosecutions for the government to put the agent on the stand and say, did you show him the photo spread ten minutes later? Was there a lineup? Who did he identify? That is admitted. It is further admitted, consistent with this rule, that the witness then shows up in court, doesn't have to be a cooperator, and can be asked the same thing as you sit here today. Do you see the person in court? Now why are both of these allowed? And they are always allowed. And what Your Honor is suggesting, I respectfully say, is a radical change in daily practice. The reason they're always allowed is what Judge Rendell explained in the Lopez case, which is the reason for this rule. The reason for this rule allowing identification statements, not as a hearsay exception, but not as hearsay at all, because it's in Rule 801, is because identification closer to the time of the event is seen as more reliable. What the rules makers decided was that when you have an identification that's made five minutes, ten minutes a day after the event, that is more reliable than somebody sitting in court one year or two years later. And that's why this distinction of recantation versus not recantation is not what any of this is about. What this is about is the rules makers deciding that identification testimony, even made out of court, is more reliable closer to the event. And that's why this happens on a daily basis. So that means that your position is, despite all of the other testimony that Pedrini offered, that's all fluff because this is the only thing that matters and in any case, this would have been admitted. That's exactly right, Your Honor. And it's fluff because it was undisputed. My friend, Mr. Feinberg, is not going to stand up today and tell you that Rodriguez didn't take the package out of the car and put it in his pocket and get arrested. Now those are the additional facts. They came through an agent. But no reasonable attorney, I would suggest, could think that you could make this objection if you boil it down to the identification. Who was sitting in the car when you're asked that five minutes later and think that would be excluded? And therefore, it's not constitutionally ineffective assistance. Why should that be our analysis when Judge Du Bois, is he still there? Yes, sir. Du Bois. Yes, sir. When Judge Du Bois is looking at the entirety of Pedrini's testimony and saying the effect of the entirety of this testimony on the jury had an effect that's violated or strickled. Well, because the only basis of his conclusion that there was ineffective assistance and prejudice is that Pedrini repeated the specific testimony about Mercado's repeated presence. And then he says that's the only fact that matters in this case. Well. And therefore, it's ineffectual. I do want to, if I have time, I have to talk about the strategy. We'll give you more time. Thank you. And he said that, therefore, taking away the opportunity to cross-examine Mercado Nunez as, you know, that he was just making this up. But wasn't the statement to Pedrini, that could be argued was also fabrication. Both of them were after he had a motive to cooperate. So I guess, and I probably reserve that question for your opposing counsel, but it seems to me it doesn't necessarily mean that Sciola didn't have the ability to do that. Now, Sciola didn't. He adopted Mercado Nunez's, you know, statement and went a different way in terms of what his theory was. But it seems to me that, again, Judge Du Bois' premise that, by allowing it, he took away the opportunity to later cross-examine on recent fabrication, he could have argued that both of them were recent fabrication. He absolutely could. And this, I think, is a good place for me to segue into the second independent basis for this, which is strategy. And what is most striking about the district court's ruling in this case is the district court is selecting one strategy that he prefers as better than the strategy the defense counsel selected. And that, we think, is an error as a matter of law under Strickland and many, many decisions of this court. And Your Honor makes a really good point, if this is the point, if I understand correctly, which is that, in what Judge Du Bois is saying here, it's not enough just to challenge, keep out Pedrini. You could object, and maybe the judge would keep out Pedrini's testimony. That gets you nowhere, because Rodriguez-Nunez is still going to get on the stand and say he was there all day long. The other half, and the judge mentions this, and Your Honor alluded to it, the other half is you need to go after Rodriguez. You need to go through all the normal impeachment, which the district court suggested. He's a cooperating witness. He's got so much to gain. You need to go after him and say, you're making it up. The only time Mercado was there was the last time, and you're making it up because you want to curry a benefit. And this is where Skiller testified, that wasn't my strategy. And it doesn't work unless you pursue that strategy. He says, my strategy was, I liked what Rodriguez had to say. Whether it's admissible or inadmissible, of course defense counsel can do that. He says, I like the fact that both Pedrini and Rodriguez are saying at no time from minute number one did Rodriguez ascribe any action to Mercado whatsoever. He sat there, even though Mercado is sitting in the passenger seat, and the drugs come out the passenger window, Rodriguez says, I don't know who handed me the drugs. And what Skiller says is as the case developed, he called it manna from heaven at some point. This is what he wanted. He wanted to argue a mere presence defense. Yeah, but on the manna from heaven point, isn't the key that by Pedrini lending his imprimatur to Rodriguez Nunez, that enhances Rodriguez Nunez's credibility with the jury and that that's the issue? So that, I get your strategy point, but the point is, is that even accepting that strategy, not objecting to Pedrini is inconsistent with the strategy. There's no strategy that was articulated that is consistent with letting the entirety of Pedrini's testimony in, because no strategy that allows that testimony in is helpful to Pedrini and Mercado, not Mercado, Rodriguez Nunez. And since it's not just Rodriguez Nunez, now that you're adding Pedrini, that's the issue. Isn't that what the judges focus on? Let me try to explain better if I may. Let's put five minutes more on the time. Thank you, Your Honor. Your Honor, yes, Pedrini does bolster Rodriguez Nunez, and the reason it's strategic to do this is because the defense counsel accepts Rodriguez Nunez's testimony. He wants to bolster Rodriguez Nunez's testimony as it plays out. And he did nothing. Mercado did nothing. Exactly. And when you read the closings, and I thought it was very helpful that the court last week asked us that we submit the closing arguments, he explicitly says, I think it's page 37, I think of the supplemental appendix, he explicitly says to the jury, I accept Rodriguez Nunez's What he did, what Sciola did throughout the trial, was he laid lots of foundations. Because as he said, as a defense lawyer, you never know what the testimony is going to be. But once he saw it came in the best he could hope for, he got testimony from the agent and Rodriguez. Mercado did nothing. He sat there. Not only did he find evidence that he was merely present, and clearly there's evidence he was present, but you've got to find an act on the part of Mercado. Right. So he liked Pedrini's testimony because it shows that from not just at trial, but from the very first moment that Rodriguez is arrested, when his motive to cooperate is at its height, even then, with Mercado sitting right there in the passenger seat, that even then, Rodriguez says, this man did nothing. He sat there. That's helpful. But can I ask a question about that? Sure. It says at the cost of accepting that testimony and building on it, is to accept with no ability to challenge as lacking in credibility, the testimony that Mr. Mercado was merely present on a repeated basis throughout what turned out to be a very busy day for these traffickers. That's right. And that, Your Honor, is what gets us to the heart of this appeal. That's my question. Which is, it's a strategic call, and the Constitution confers that call on defense counsel, not, in hindsight, on a court. I understand that we're not supposed to second-guess it, but my question is this. Was there any other testimony other than Mr. Rodriguez's that put Mercado at the other occasions earlier in that day? No, there wasn't. Okay. And so he was clearly in the car on that one occasion. On the last occasion, right. Right, on the last occasion. And there were photos in the morning that would corroborate that these two men were associating with each other that day. So Rodriguez is not uncorroborated. What we see in the phone call evidence in the morning is that when Rodriguez calls the buyer, who he thinks the seller is, the seller first calls Mercado twice before he calls back Rodriguez. And, of course, if I can anticipate opposing counsel's response, it's going to be that there's some uncertainty about whether this was, in fact, Mr. Mercado's phone, whether it was taken from his person. Well, actually, that's a new issue that was raised in the letter. The government had to call an extra witness at the end of the trial to make it clear this phone was taken straight from Mercado, and then there was no real dispute about that in closing in front of the jury. But I want to get the strategic point is really what this is all about. I appreciate that. Which is that the defense counsel here has to make a call. He could go after Rodriguez. He could say, you're a cooperator, and everything you just said about Mercado being there all day is false. But that puts him in a tough spot because he likes the other half of Rodriguez's testimony, which is- Which he viewed to be the more important part. That's right, which is Mercado didn't do anything. So he could pick that strategy, absolutely, and see what happens. But the risk he runs- Does anybody say that Mercado did anything? No. And the risk he runs is that if he- and I'll come back to that at the end. If he fails in that attack on Rodriguez, then he's lost the jury. If the jury says, look, we've seen the phone calls. We know he's sitting in the car when he's arrested. We know a second man is there when the drugs are delivered because an agent could see there was a second man, just couldn't see who it was. We're just not buying this. He's lost the case. Is it, in your view, and this may be just a softball question, is it impermissible second guessing for us to say that it would- that choosing not to be somewhat inconsistent, that is telling the jury, I want you to believe this guy when he says Mr. Mercado did nothing, but I don't want you to believe him when he says Mr. Mercado was my shadow all day. Is that cross the line beyond what Strickland permits? Yes, it's impermissible. What the Supreme Court says in Strickland is that where counsel makes a strategic choice, and it's hard. You don't always make the right choice. But where counsel makes a strategic choice, it is virtually unchallengeable. That's what Justice O'Connor said. Judge Rendell once wrote, I think in the Marshall case in 2005, essentially unchallengeable. So I prefer- Well, I mean, there are strategies that are just, you know, strategy not to do anything at the death penalty part of a death penalty case. Well, even that the Supreme Court has suggested may not even be ineffective. But- This is a very high standard, and the defendant has the burden to show not that he made the wrong call, not that one call might have been better than the other, but that he was not acting at all as the attorney afforded by the Sixth Amendment. That's what we're talking about. I agree, though, with the proposition that if you made a- if you engaged in a stratagem that was inconsistent with any conceivable theory, that clearly would be violative of Strickland, right? It could, sure. Okay. So if a district judge engages in an analysis that leads a district judge to say, you know, I can't think of a plausible strategy which would allow this testimony in. You'd agree, at least theoretically, that that could be violative of Strickland? Yes, sir. Great. But here, this Court's review is plenary. No facts are in dispute here. The review regarding ineffective assistance is plenary, and we are telling, as did Mr. Sciola, what the strategy was. And what we have here is very purely a choice of two strategies. I know Mr. Feinberg might say that the district judge found there was no strategy. I don't think that's supported by the record or by Mr. Sciola's testimony. We have two strategies. We have the mere presence defense. He wants to argue to the jury, not believe half of Rodriguez and not the other half. He wants to be consistent. He wants to say to the jury, I accept Rodriguez's testimony. Mercado did nothing during the day. That's one strategy. The other strategy is what I call the no-presence defense, what Judge Du Bois suggests. Take him on, attack him, say he wasn't there. This is why we have defense counsel. This is why people like Mr. Sciola have been practicing for 35 years. This is what they do. My question to you is, isn't allowing all of Padrini's testimony in, despite how you may quantify it, isn't that inconsistent with both theories? No, I don't think so. Again, what it's saying is that the point of the strategy is. Well, why isn't it? Because if Padrini's testimony creates a greater likelihood or creates a better inference that Mercado did more than just sit there, because Padrini's testimony is everything that Rodriguez told him earlier on about what happened during the day and so forth, why isn't that inconsistent with allowing that testimony in? Because accepting Rodriguez's testimony in full means that Mercado was present all day long, four times, and didn't do anything. And Padrini supports that, says that from the moment Rodriguez could cooperate, he could have said at that moment, yeah, Mercado handed me the drugs, and he didn't say it. That's consistent with what Sciola wants to argue, which is at no time ever, this is what he emphatically says to the jury, at no time ever has he said Mercado did anything. If I can make one last point. Yes, and just make it brief, please. I'll try, though. Here's the point, which is we're looking at this in hindsight, which the Supreme Court says he can't do. And we're looking at it when this was on direct appeal. It was a different standard of review and on Rule 29. The standard of review on Rule 29, as Your Honors well know, actually I'll have the benefit of being here in a week for the But as we know, the standard on Rule 29 is, is there any reasonable inference that would support the verdict, even if there's an equally good contrary inference that would support a finding of not guilty. But defense counsel at trial is not looking at that. He's not saying to himself, oh, I'm really worried about what's going to happen on Rule 29 if I lose this case. If I let in this evidence about Mercado being present all day, the Third Circuit's going to say, this is a really close case, but that's a reasonable inference that repeated presence equals involvement. He's not thinking that I'm going to lose Rule 29. He's thinking, how do I win with this jury? And this jury isn't looking for reasonable inferences one way or the other. If it finds equally reasonable inferences, it may go with my inference. What I'm here for is to convince the jury of reasonable doubt. And I've got a shot. And my argument is Mercado's sitting in the car. He's a friend. He's riding along. And this government has not proven that he did one single thing, that he even spoke once, did anything, handed anything. That's my shot. And he's decided to take that shot. And we have never seen a case in which an appellate court has held that to be constitutionally ineffective assistance to make a strategic call like that. And then, of course, we have the prejudice argument, which is in a case this close where the strategies are so close, how can one say there's a substantial probability that one strategy would work out better than the other? So you have all these multiple grounds. I appreciate all the time. We'll hear from you on rebuttal. Thank you. Good morning. May it please the Court. Jonathan Feinberg on behalf of the defendant appellate Domingo Mercado. I'd like to start by addressing the point that the government makes that preferred strategy on defense counsel in this case. Let's do that by addressing what was wrong with Sciola's strategy. In other words, what was wrong with arguing mere presence is not what you need for aiding, abetting, et cetera. Kind of zero is zero. And Judge Du Bois is kind of saying, well, zero one time is zero, but four times zero adds up to something. What is wrong with that strategy that Sciola adopted? There are two points. First, as a legal matter, as this Court held on direct appeal, repeated presence is in and of itself enough to establish guilt. So it's an incredibly risky strategy under the law. Was that in the jury instructions? Was the question of presence in the jury instructions? The fact that repeated presence supports a finding and aiding and abetting. There's nothing that explicit. That comes from factual argument from the prosecution. And I was very pleased that the Court asked for production of the full opening and closing statements because the very first words out of government counsel's mouth in the opening, and I'm going to read, if I may, from the supplemental appendix of the government file, the page one. Ms. McCartney, the prosecutor, starts by stating, on October 14th in 2008 this defendant, Domingo Mercado, was in a car while a conversation took place about delivering over 200 grams of heroin. Later that same day this defendant was in a car. A short time after that this defendant was in a car, a different car. I paraphrased a bit there. Nowhere does she say at any time in the opening that this defendant took any affirmative conduct or engaged in any affirmative conduct which would show some kind of participation in the drug transaction. It is abundantly clear from the very beginning of the case that the government's theory is presence and it's repeated presence. Well, she couldn't urge that he was present and that he did something when, for all she knew, there wasn't going to be evidence of that. That would be a pretty weak way to open your case. Here's the thing. I think we have the testimony from trial counsel at the habeas portion of the case in which he acknowledges that of all the discovery information that was provided in this case, not a single piece of paper ever ascribed any affirmative conduct on the part of Mr. Mercado. That was essentially undisputed. And really when it comes down to it, the only disputed fact in this case, the only disputed fact at all was whether Mr. Mercado was in fact present on those prior occasions at the front and Lippincott location. Well, what about the phone conversation or the phone calls, not the conversation, the phone calls? That's some evidence. I mean, there may be some issue that later emerges. But when you say it's essentially undisputed that he was merely present. There's no question about that, Your Honor. There is the pattern of phone calls. That's absolutely correct. And, Your Honor, perhaps in your questioning, Mr. Zausmer foreshadowed my response, which is that the government had a real problem in how they were going to address these phone calls. And, in fact, I noted in my response that the way Agent Pools, the case agent in this case, responded to questioning about where the phone was recovered, I think came as a significant surprise to the prosecutor in this case. No one could put it together where this phone came from. And I think that any skilled prosecutor, upon hearing this factual presentation, there's no chance that a prosecutor is going to lead off in closing by saying, this case is about the phone calls. Not at all. That's a serious problem. And you open yourself up to serious attack if you're counsel for the government. So in that case, your fallback position, not your fallback position, but your primary position is that it's the evidence of repeated presence. It's not the phone calls at all. And I don't think that was ever understood, both in front of the jury. So let me throw what Mr. Zausmer mentioned, and that is, great, Padrini gets on, and he essentially parrots what Rodriguez-Nunez tells him. Why isn't that a so what? In response to the question that Judge Rendell asked, and I want to make sure I understand, is Your Honor suggesting that if he was lying to the jury, he was also lying to Agent Padrini? Right. Why was that so damaging? It's damaging because of the repetition, and it's also anticipatorily corroborating everything that Rodriguez-Nunez is going to testify to. But don't we have anticipatory – I've never used this phrase, so I have to be slow. Anticipatorily corroborating, that's what you said? Yes. Right. It happens every day. I'm no longer a district judge. Judge Rosenthal is. I used to hear that fun. She hears it now. I mean, you have that all the time. Almost every – Yeah, and to follow up on the question, in every case, the defense lawyer spends a great deal of time cross-examining the corroborating defendant, about the plea agreement, about the incentives to cooperation, and the jury looks on with great patience and at the end of the day finds everything that the corroborator says entirely believable. But at every case, it either starts or ends with the case agent. They either set it out or they put it together at the end. They have to show somehow that Ricardo Nunez's testimony, that there was going to be a way to find that he was not believable, that he was just a weak witness and he just – and this really turned the tide because he really – because that's prejudice. But for this, they would have disbelieved that it was Mercado who was there all day. I mean, we got Mercado, the phone calls in the morning, and we got Mercado – I mean, Mercado was on there. Picking up the money. And I got the Mercado in the car. We got Mercado in the – or at least in the car at the end. He has goods, you know. Is the jury – how can you tell us the jury is going to disbelieve Ricardo Nunez? Your Honor's question, I think, went into the prejudice prong. If I can bring it back to the reasonableness prong as to the strategy that's employed, and I'm happy to address prejudice as well. But with regard to the reasonableness, for counsel to have said, I'm going to accept what Agent Pedrini says, Rodriguez Nunez said, is simply not reasonable under these circumstances. Why? That's the question Judge Greenaway asked. And that's because – first of all, it's not admissible. We can get into the identification testimony. I think the court is probably receptive to my position on that based on the questioning that was asked. If the evidence is not admissible, then why let him in if it's going to set up for the jury everything they're going to hear from Rodriguez Nunez? And here's the point. I make the argument in the brief. Well, you're saying why not? What was wrong with it? What's interesting about – look, there's some dispute in the brief about whether there was factually a strategy. I could tell from Your Honor's response to Mr. Zalzmer's point, addressing my factual argument that Judge Du Bois found that there was no strategy. I perhaps may not have the best perception on that point. I do think the opinion from Judge Du Bois can be fairly read to suggest that there really was no coherent strategy here, because what we see are very stark inconsistencies in the way trial counsel handled things. Well, but I do think, and I've been a trial judge too, things can change. Defense counsel is not 100 percent sure which way this train is headed, and God has to preserve all options. And I think he testified, credibly, that he had a strategy. I don't know if that's a finding of fact or not that Judge Du Bois – you're saying Judge Du Bois disagreed with that. Ultimately, we still come to the question of reasonableness, and I can frame my argument in that context. Well, and get to the prejudice issue, because I think that the – the reasonableness issue morphs into prejudice. Understand that it's close. To lay the groundwork for that, if I can point out the fact that trial counsel had set up in his opening an attack on Rodriguez-Nunez's credibility, which was close to an objectionable opening, the way he made this argument, which suggests that this guy's got all the reasons in the world to lie. All the standards. And then moments later, literally moments later, the first witness testifies, and he hangs back, and he claims that that was a strategic decision. Then, shortly after that, he objects to the testimony of Officer Quinonez, the Spanish-English translator, which parodied exactly what we heard from Agent Pedrini concerning Rodriguez-Nunez's statements. It's impossible to square those things. And I would suggest that when trial counsel was objecting to Quinonez's testimony, he's in that right frame of mind – what Judge Du Bois found was the reasonable frame of mind – that that testimony was not admissible. Even further, and I want to acknowledge this is not addressed at length in the brief, I'd like to point the Court to Appendix Page 180. That is where – 180? 180. Oh, okay. Trial counsel is questioning Agent Pedrini on cross-examination, and narrows down with him that the only person who put Mr. Marcato at that location, front and lip and cut, is Mr. Rodriguez-Nunez. And there's a great reason for doing that, because it narrows down the evidentiary support for the conclusion that he was repeatedly present. Now, my rhetorical question is, why would you do that if you aren't going to attack the evidence supporting repeated presence? There's no reason to engage in that framework of cross-examination unless you're going to attack it. So when we see these completely inconsistent actions by counsel, on the one hand, opening and attacking credibility, consistent with that, narrowing down to Rodriguez-Nunez. Is inconsistent strategy a sufficient basis to find that the reasonableness prong is valid? Oh, no. No, and that's not the point. The point is this. Trial counsel's explanation for why he decided not to object, whether you accept that as a factual finding or not. Trial counsel's explanation is not reasonable under the circumstances. But I'm going to press on that a little bit. Again, coming back to this theme of inconsistency, we're kind of picking among inconsistencies, because if the approach had been to ask the jury to disbelieve Rodriguez-Nunez, he's also the one who is the best source, if you will, in his post-arrest immediate statements of supporting the theory of presence, but mere presence. That is, I didn't do anything. But if you ask the jury to say, don't believe this witness when he says that this defendant did nothing, was present earlier, but believed this witness when he says that the defendant was there throughout the day, is that inconsistency in defense theory potentially confusing to the jury and therefore one that a seasoned defense lawyer, as the evidence comes in and sees where he's got advantages, should have the latitude of saying, I'm going to now go this direction and not muddy it up in the jury's eyes. I see the point. I would not characterize that as inconsistent. And the reason is that when you look at the entire factual record, no one anywhere was ever suggesting that Mr. Mercado engaged in any affirmative conduct related to the drug transaction. No agents testified to that. Rodriguez-Nunez certainly didn't testify to that. And trial counsel knew he was not going to because he had the discovery which showed it. And had he gone off script, to use the word that trial counsel used. Except for those phone records. And that's something that I know that you think that there's some question about their reliability or their persuasiveness. But those phone records are there. I understand Your Honor's point. However, I would suggest it's not just me making a factual jury-type argument to this court. Judge Du Bois at Rule 29. This court affirming the conviction and sentence. The district court on habeas. No one has ever suggested that the phone evidence leaped over the evidence of repeated presence. I'm not saying it leaped over. It's there. When you say that there was no other source of evidence of more than mere presence, I'm simply pointing to the fact that the phone pattern, the phone pattern itself could be characterized as evidence of more than mere presence. If you tie them to Mercado. And there unquestionably is a circumstantial inference that can be drawn for the government. That's my only point. And in the closeness of the case, and finally I'm getting to answer Your Honor's question on prejudice. Prejudice, yes. Please. When we address a question of prejudice in a case like this, where at every stage the district court at trial, this court on direct appeal, the district court on habeas has said this is a close case. There's no question about it. Judge Du Bois has been on the bench for 25 plus years, said this is one of the closest cases I've seen in my entire career on the bench. When you have a close case like this, any conduct by counsel has to be looked at under the microscope more closely. Wait, wait, wait. Strickland is not a microscope, is it? Well, and perhaps that's poor language choice on my part. If it is, district courts are really in for trouble. Big time. Yeah. I don't intend to suggest that there's some type of enhanced review. But I do quibble with the government. And when the government says that the trial court imposed its own strategy on counsel, that's not at all the case. You look carefully at Judge Du Bois' opinion. What he was saying is, okay, here's the strategy that trial counsel was talking about. It's not reasonable under the circumstances of this case. And when you get to the prejudice question, when you look at the unreasonable conduct on the part of counsel. Well, let's see. If Sciola had done what Judge Du Bois said he should have done, i.e., and assuming he could keep Padrini's testimony out, argued that Ricardo Nunez had a motive to lie, do not believe him. Well, believe part of him and don't believe the other part of him. How would it have? And there are these phone records. The blue is Mercado. The pink is Soto, is Morissette. And the green is Nunez, Ricardo Nunez. Sure. How would it have turned out differently? I don't think that a skilled trial counsel, no question. Actually, we'd be here arguing that he should have allowed Padrini's testimony and to bolster the fact of the mere precedent. Go ahead. How would it have turned out differently? I don't think that a skilled trial attorney would ever get up and say, believe this part, don't believe this part. But the government would then clearly say, yo, he's asking you. What a trial attorney would say to the jury is, no one is telling you that Mr. Mercado did anything affirmative during the course of this drug transaction. But tell me, how would it have turned out differently? Was Ricardo Nunez a weak witness? Was he a bad witness? Was his credibility such that really could be impugned such that he wouldn't have been believed with respect to the presence of Mercado? Aside from his interest, his bias and motive to fabricate his testimony, that's what you have. And, of course, looking at the record that we have. But isn't the argument that there's a great argument that the prosecutor comes up with and would come up with, had she had some help from the bench, in Roboto's summation in that situation, they'd say, look, Rodriguez Nunez is credible because he would have come up with a better lie. I mean, the better lie is actually pretty persuasive, which is, sure, Mercado said something or he did something or he passed this or he knew what we were talking about or all of that. Right? Instead, no, he doesn't say that. He says the guy said nothing. Right? But he was there four times and these phone calls, as soon as A calls B, B calls Mercado. Right? I mean, now, we've all seen convictions on less evidence than that. So I'm wondering how we can come to the conclusion that you want us to come to given that state of facts in the hypothetical we're trying to build. Can I ask a follow-up? Sure. I hope I remember the question. No, it's the same question. Particularly keeping in mind the difference, if you will, between the ability of defense counsel to say, think about what you haven't heard. You haven't heard anybody say that he affirmatively did anything, on the one hand, and the ability of defense counsel to say, the guy with the biggest motive to pin it on Mr. Mercado when he had that chance affirmatively told you he was a lump on a log. Over and over again. Over and over again. There's a big difference in persuasiveness, arguably. Why isn't that a strategic choice that plays right into what Judge Greenway said? Well, I think, first, we're getting into a hypothetical strategic choice because that was not a strategic choice that was made. The strategy that was discussed by trial counsel was just to accept this testimony, and the district court's evaluation was whether that was reasonable. Right. No, no, no. I was playing out what the district court's best scenario would be, right? Exactly. The district court says, if we get Padrino out, this is what we're left with, and my argument was the retort to that, which is not necessarily better because it would still lead to a conviction. Oh, no, I understand that, and I don't read Judge Du Bois to have said, this is what we're left with. I view him as having stated this strategy as it was explained to the extent that there was a strategy was not reasonable under the circumstances. That may be splitting hairs. I acknowledge that. But ultimately, the point to argue to a jury in this case is, look, Rodriguez-Nunez, he's got his interest, he's in deep trouble, he's got a motive to fabricate, and, yes, he's not ascribing affirmative conduct to Mr. Mercado, so he's giving the government as little as he thinks he can to help make the case. That's what a trial attorney would say, and you can't believe that. You can't believe the little that he's given to the government because he's got these motives to lie. And, you know, look, we can quibble. You've got that argument whether, pardon me, you've got that argument whether Padrini testifies or not because, at the end of the day, your argument is, look, Padrini's not adding anything to it. Oh, no, no, no, it's a much more – the argument becomes, in scale, much more difficult to make. And I see I'm way over my time here. Don't worry about that time. Thank you. If they say not to, don't worry. And we've given Mr. Salzman. The argument becomes exceptionally difficult because the prosecutor was able to say in her closing argument, when you assess the credibility of Rodriguez-Núñez, look at what he said to the agents. He said it before. In fact, we cite this in our brief to that portion of the appeal where the prosecutor made that argument. It gave the prosecutor additional ammunition to amplify or to justify the credibility of Rodriguez-Núñez because of this decision to allow this testimony in. And, look, I can return – I haven't even addressed the question of identification testimony. I will defer to the court's questions on that issue. But assuming that the evidence was inadmissible, when you don't object and you allow that in, you're giving the prosecutor this extra weapon, which they shouldn't have in the first place, to amplify the credibility, which you're going to attack in your closing as you've told the jury you're going to in your opening. That doesn't make any sense. So the jury is left scratching its head saying, this lawyer told us this guy's got all these reasons to lie and now he's kind of accepting it as true. That's not reasonable. I don't understand what he's saying. We may as well just find him guilty. In the closing, were there reasons to lie? Was that argument raised? No, it was not, which was starkly inconsistent with what was said in the opening, with what was evidenced from the objection to Quinonez's testimony, and with what was built in from the objection, pardon me, not the objection, from the cross-examination of Agent Padrini with regard to who had that narrow opportunity to observe Mr. Mercado, Rodriguez-Nunez being the only one, because no agents even knew he was there. Let me ask you a quick question about identification. I'm just looking at 801D1C. Doesn't that assume that it would be Mercado-Nunez that a clarent testifies and is subject to cross-examination? Does that presuppose that it would have been Mercado-Nunez, not Padrini who would have been on the stand or not? Is that your contention with respect to that? No, my contention is a little different. I have a separate contention in the reading of Lopez. I was delighted to learn that you'd be on this panel, Judge, so we could discuss. Me too. Actually, I think it is an important point to note that I read Lopez as not stating a broad rule of admissibility as to 801D1C. Rather, in a whole host of issues that are addressed in that case, Lopez is saying, look, you know, this is a close call. It's not an abuse of discretion. In any event, it's not prejudicial. It is harmless error, if there was error. What the government is saying, and Judge Greenaway pointed this out in his questioning, is that if you read Lopez the way they do, every case can start with a witness taking the stand for the government that says, so-and-so said this to me about the defendant being there and doing this. That's really, I think, the best way that I can explain their position. I don't view the rule as envisioning that at all. I certainly don't view Lopez as having authorized the introduction of that type of evidence, and there's no other case out there. This truly would be treading new territory to hold this admissible of identification. Thank you. Thank you. I ask that you affirm the district court. Thank you, Mr. Souther. Mr. Souther, may you clear that up? I'm looking at D1C. Sure. Does it really apply to Pedrini's testimony? Yes, Your Honor. What 801 D1C says is the declarant, meaning the declarant is always the out-of-court declarant who made the statement. Right. The declarant is available to testify and available for cross-examination. That's what we're doing here. About a prior statement. Correct. And then the prior statement is allowed. I thought it was only envisioning the situation where it is the declarant who is then testifying. No, it allows the prior statement to be brought in through any credible witness, just like any hearsay statement. So Rodriguez-Nunez is the declarant. He is available and was cross-examined regarding the statement. That allows any witness, Pedrini being the appropriate witness, to testify. Right. You have to stare at it for a minute, but it works like 803 does with regard to hearsay as well. Just a couple other quick points.  And what we saw is Sciola acting as an effective advocate. He lays the groundwork for an attack on Rodriguez-Nunez if he has to do it, but then he himself testified. As Pedrini's testifying, he's realizing, I can get what I want out of this guy. He's an honest agent, he says. And it's interesting to look at the cross of Pedrini. He's barely out of his chair. He says good morning a page later. He's barely out of his chair before he says to Pedrini, he didn't tell you who he got the drugs from. That's what he wants. It bolsters his strategy of mere presence that, again, even at the moment he's arrested, Rodriguez-Nunez does not put any conduct on Mercado. This was a closed case, and it was appropriate and a permissible strategy within this wide range of permissible advocacy for Sciola to try this mere presence defense. How about the point made about our own direct appeal, that the mere presence is problematic when it's repeated? Well, as I said, that was the inference that allowed the court to support it. But counsel can think, I want the jury to go with my inference instead of the other inference. The fact that an inference will support the verdict on deferential review doesn't mean he's doing the wrong strategy by taking his best shot. And he thought his best shot was mere presence. And the point I want to make on that, the interesting thing no one's mentioned from the record, is that Judge Du Bois, who we all respect tremendously, he says at the Rule 29, if I were a juror, I would have acquitted. So what does that tell you? That tells you Sciola did a pretty good job. He had one juror with him, unfortunately not a member of the jury, to then say that this was ineffective assistance of counsel. And the last thing on prejudice. The prejudice point, I want to refer to the Supreme Court's recent decision in Harrington v. Richter, which we cite in our brief, page 38, where the Supreme Court said the likelihood of a different result must be substantial, not just conceivable. And that's all we have here, is a conceivable different result. Had Sciola gone after Rodriguez-Nunez and not allowed Padrini's testimony and attacked him, we can only guess. Would the jury have then said, oh, we don't believe that Mercado was there? Or would they instead have said, no, this guy's a fine witness and we believe everything he just said. And we don't think very well of the defense for attacking him on only part of his testimony. This is a guess, and that's not sufficient under the prejudice problem. Could you also submit the jury instructions? Yes, we will. Thank you very much. Thank you. The case is well argued. We'll take it under advisement after the court to recess court.